696

JUANA SEGUNDA LATORRE, Plaintiff and Appellant, *v.* GASPAR CRUZ TEXIDOR ET AL., Defendants and Appellees.

No. 9461.—Argued November 3, 1947.—Decided November 21, 1947.

*Diego Guerrero Noble* and *Carlos D. Vázquez* for appellant. *Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The plaintiff appeals from a judgment for the defendants, rendered by the District Court of San Juan on December 4, 1945. In support of her appeal she maintains in her brief that (1) "the district court committed manifest error in holding that the conveyance in favor of Gaspar Cruz Texidor was valid in spite of the fact that it did not involve any consideration whatsoever, improperly applying § 1228 of the Civil Code; (2) the district court erred in holding that

the plaintiff was barred from attacking the contract for professional services entered into with Attorney García Mújica because she was in *pari delicto* with him and because the contract had already been executed''; and (3) ''the district court erred in entering a judgment contrary to law and against the evidence introduced.''

In the complaint filed the plaintiff alleged her ownership of the two properties which she described under the letters ''A'' and ''B'' and of half of the one she described under the letter ''C,'' and that the defendants, conspiring among themselves, by deceitful means, and taking advantage of her ignorance, made her appear before Ramón García Mújica, a notary of Carolina, and sign deed No. 102 contained in the protocol of said notary, whereby she purported to sell her aforesaid properties to defendant Gaspar Cruz Texidor, for the total sum of $1,000, it being stated in the deed that she had received the selling price from the hands of the supposed purchaser prior to the execution of the deed; that, furthermore, the defendants, by means of the same conspiracy and deceit, caused the plaintiff to appear in said deed as granting authority to the defendant Epifanio Vizcarrondo [1] to collect the rents of the houses described under the letter ''C'' and to apply the same to the payment of a judgment, which is said to have been rendered by the Municipal Court of Carolina; that all the agreements and stipulations set forth in the said deed are absolutely false, simulated, and nonexistent, because they are not the result of the spontaneous will of the plaintiff, who has not given at all her consent to the sale of said properties to Gaspar Cruz Texidor, nor authorized the defendant Vizcarrondo to collect the rents mentioned above, and because there was no consideration involved in the said agreements and stipulations, as the defendant Gaspar Cruz Texidor has never paid to the plaintiff

---

[1] Vizcarrondo died and by an order of January 15, 1946, the district court substituted his heirs in his place and stead.

the price simulated in said deed, and the value of the properties apparently sold is much greater than the one stated in the said deed.

As a second cause of action, the plaintiff reproduced the foregoing allegations and further averred that, since December of 1940, the defendants, unlawfully and without any title therefor, have taken possession of the three described properties, collecting the rents thereof and appropriating to themselves all the fruits yielded by them. The complaint concluded by praying (a) that said deed executed before Notary García Mújica and any record of the same which might have been made in the registry of property be declared null and void; (b) that the defendants be ordered to deliver to the plaintiff the possession of the immovables described in the complaint; (c) that the defendants be adjudged to pay *in solidum* to the plaintiff the rents produced by those properties, together with costs, expenses, and attorney's fees; and (d) that the plaintiff be granted any other relief which might be consistent with the allegations of the complaint and the evidence introduced.

The defendants duly answered and denied the essential averments of the complaint, setting up some matters in opposition thereto.

The case went to trial, at which ample oral and documentary evidence was introduced by the parties. That evidence may be summarized thus: Enrique Latorre died intestate, in the town of Carolina, about September 1937. His brothers Cristino, Quintín, and Josefa Latorre immediately took charge of his estate. The plaintiff, Juana Segunda Latorre, who at that time resided in Lares, claiming to be a natural daughter of the deceased, came to Carolina and entered into a contract for professional services with Attorney Ramón García Mújica, whereby the latter bound himself to represent her in the filiation suit which was to be instituted, to prosecute a proceeding for the proper declaration of heir-

ship, and to pay all the expenses which such litigations might cause. The plaintiff, on her part, agreed to pay to said attorney 50 per cent of any sum which might finally be recovered in those suits, and not to compromise the latter without his authorization.

The corresponding action of filiation was brought and the proper trial held. Before any judgment had been rendered therein, Attorney García Mújica by a written instrument assigned to the predecessor in interest of the heirs of Vizcarrondo all his rights and interests in the said contract for services, for the sum of $450. The action of filiation, which at that time was pending judgment, was decided shortly afterwards, upon a stipulation signed by the parties, in which the defendants accepted that the plaintiff was a natural daughter of their deceased brother.[2] Judgment was entered accordingly, and thereupon the proceeding for a declaration of heirship was prosecuted. After the holding of numerous conferences between the plaintiff and Vizcarrondo, regarding the value of the estate and the manner in which the latter's share should be paid, it was agreed to designate Andrés Carmona, Margaro Viana, and Daniel Mújica, merchants of Carolina, for the purpose of appraising the assets of the estate, which they did. Then the plaintiff and Vizcarrondo came to San Juan, where the latter executed, before Attorney Francisco Fernández Cuyar, four mortgage notes payable to the bearer for the sum of $1,000 each, secured by four of the properties of the inheritance. It was also agreed by Juana Segunda Latorre and Vizcarrondo that, in order to satisfy a judgment obtained in the Municipal Court of Carolina by Daniel Mújica against them, Vizcarrondo would collect the rents of the property described in the complaint under the letter "C" for such time as might be necessary to pay the indebtedness in full.

---

[2] See § 1715 of the Civil Code, 1911 ed., § 1713, 1930 ed.

At this stage, on December 22, 1940, the litigants herein appeared before Notary Ramón García Mújica and executed two public instruments, the first, No. 101, for the cancellation of mortgage obligations, and the second, No. 102, being a deed of sale. At the execution of both instruments, the plaintiff Juana Segunda Latorre was accompanied by her husband Salomé Quiles and by her attorney, Benicio Sánchez Castaño, Esq. The defendants Epifanio Vizcarrondo and Gaspar Cruz Texidor, the subscribing witnesses, the notary, and other persons were also present. Both deeds were read by Attorney Sánchez Castaño, who informed the plaintiff that they were in order and that she could sign them, they being read aloud by Notary García Mújica to the contracting parties and the witnesses, since all of them waived their right to read them by themselves, of which he informed them.

For the sake of a better appreciation of the scope of plaintiff's testimony, we copy her own statements, thus:

"Q.—Your name.

"A.—Juana Segunda Latorre.

\*       \*       \*       \*       \*       \*       \*

"Q.—Upon the death of your father, what was the intervention of Mr. Vizcarrondo?

"A.—When my father died, then Mr. Vizcarrondo went and took me to the law office of García Mújica and there we entered into a contract for the institution of a suit to obtain the declaration of heirship, because I was an illegitimate daughter and they made an agreement with me for them to pay all the notarial expenses, all expenses, for a one-half share of the money and to deliver to me the remaining half, net.

\*       \*       \*       \*       \*       \*       \*

"Q.—Do you remember how many properties were involved?

\*       \*       \*       \*       \*       \*       \*

"A.—Five houses and two rooms in another property.

\*       \*       \*       \*       \*       \*       \*

"Q.—In the contract which you entered into with García Mújica to pay him out of the proceeds of the properties, you have not paid that at all?

"A.—No, sir.

\*   \*   \*   \*   \*   \*   \*

"Q.—Do you claim two and one half of the six properties?

"A.—Yes, sir.

"Q.—Don't you claim the remaining three and one half?

"A.—No, because I have the three of them.

\*   \*   \*   \*   \*   \*   \*

"Q.—Do you remember if your father owed Daniel Mújica any money?

"A.—They told me he owed him $300.

\*   \*   \*   \*   \*   \*   \*

"Q.—Did you do anything to pay that debt?

"A.—A promissory note for $300.

\*   \*   \*   \*   \*   \*   \*

"Q.—Have you paid your father's debt?

"A.—No, sir.

\*   \*   \*   \*   \*   \*   \*

"Q.—Of the three and a half houses that you have, has not he (Vizcarrondo) collected the rents?

"A.—Impossible.

"Q.—Has he only collected the rents of the two and a half houses that you claim now?

"A.—Yes, sir.

\*   \*   \*   \*   \*   \*   \*

"Q.—When García Mújica read the deed, did you sign it on that day?

"A.—Yes, when Epifanio Vizcarrondo called for me to sign the deed.

\*   \*   \*   \*   \*   \*   \*

"Q.—Did Attorney Sánchez Castaño read the deed?

"A.—Yes, sir.

\*   \*   \*   \*   \*   \*   \*

"Q.—What were the promissory notes that were canceled there?

\*   \*   \*   \*   \*   \*   \*

"A.—I don't know, because Epifanio Vizcarrondo told me that he was going to get me a paper in order to make sure that I held my share, so that no heir could take it away from me and then he told me: 'You go over to the law office of Celestino Iriarte and there they will draw up that paper. Then he and I went there.'

"Q.—Who was the notary who executed that deed?

"A.—I don't know.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q.—Did you not sign before me? (Attorney Francisco Fernández Cuyar was cross-examining the witness).

"A.—Yes, sir.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q.—The promissory notes canceled by that deed, did you not have them?

"A.—No, sir.

"Q.—Did you not give them to Notary García Mújica?

"A.—I did not have them. Epifanio Vizcarrondo was the one who delivered them. I never had those promissory notes in my hands.

"Q.—In connection with a deed in which the notes were canceled, did Mr. Epifanio Vizcarrondo deliver to Mr. García Mújica the notes in order that he should cancel them?

"A.—Yes, sir.

"Q.—After the notes were canceled, were they delivered to you there?

"A.—Yes, sir.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Judge—Q.—What were the properties you claimed as inheritance from your father?

"A.—Five houses and two rooms in another house.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q.—He (Vizcarrondo) holds two houses belonging to him alone and one-half of the house where the oven is. Is that the arrangement?

"A.—That is his own arrangement.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\* ''

Although it is true that in deed No. 101 for cancellation of a mortgage debt it is stated that the appearing party, Juana Segunda Latorre, was the holder and possessor of four mortgage notes for $1,000 described therein, and that she had never endorsed or transferred them to any person or entity, the testimony of the plaintiff herself and the whole record show that said notes were issued and delivered by her to Vizcarrondo for the purpose of securing the share which belonged to him, under the contract for services ori-

ginally entered into between the plaintiff and Attorney García Mújica, and that the said notes were in the possession of Vizcarrondo at the time both the deed of cancellation and deed No. 102, attacked in the complaint, were executed.

On the other hand, it is likewise true that, although in the deed of sale it is stated that the purchaser of the properties described therein was defendant Gaspar Cruz Texidor, and that he paid $500 for the property described under the letter "A," $100 for that described under the letter "B," and $400 for that described under the letter "C," the evidence unquestionably shows, however, that Gaspar Cruz Texidor was a mere dummy of Vizcarrondo, and that deed No. 102 was actually executed as a direct consequence of the delivery and cancellation of the four mortgage notes referred to in deed No. 101 bearing the same date.

Regarding the rents of the property described under the letter "C," it was also stated in deed No. 102 that the whole of them would be applied to the payment of a judgment rendered by the Municipal Court of Carolina in an action to recover on a promissory note subscribed by Juana Segunda Latorre and Epifanio Vizcarrondo, the former authorizing the latter to collect such rentals and to apply them to the payment of said judgment, upon the issuance of the corresponding receipts. The evidence showed, however, that this was true and that, although Vizcarrondo collected the rentals, he did so pursuant to an agreement entered into between him and the plaintiff. That being so, it was wholly reasonable to state such fact in the deed.

The defendant Gaspar Cruz Texidor admitted that he had not paid any amount for the properties which were conveyed to him, and that he did not hold possession of them. But, as we have already stated, the evidence showed that the conveyance was made in consideration of the delivery and cancellation of the four mortgage notes, for $1,000 each, issued by the plaintiff in favor of Epifanio Vizcarrondo.

There was nothing to prevent Vizcarrondo from transferring to defendant Cruz Texidor his share or interest, in the contract for services originally entered into between the plaintiff and García Mújica. In point of fact, Vizcarrondo did not convey to Cruz Texidor any share or interest in the contract for services. Said share or interest had already been paid to Vizcarrondo by the plaintiff through the issuance of the four mortgage notes mentioned above. What Vizcarrondo did transfer to his codefendant Cruz Texidor was the four notes payable to bearer and this, naturally, he could do. It is possible that the notes were not actually delivered by Vizcarrondo to Texidor, but the uncontroverted fact remains that the deed in favor of Cruz Texidor was executed as a consequence of the cancellation of the notes. What reasons could Vizcarrondo have for not appearing as grantee of the properties affected by the mortgage notes? The record tells us that this was due to the fact that at that time there were some disagreements between Vizcarrondo and his wife and that he did not wish to purchase any property in which she might claim a share. Irrespective of the scanty worth of such conduct on the part of Vizcarrondo, he could undoubtedly transfer the notes to Cruz Texidor and the latter, we repeat, was nothing else than a dummy of Vizcarrondo in appearing as purchaser of the properties in deed No. 102. The execution of said deed doubtless involved a simulation. However, § 1228 of the Civil Code, 1930 ed., provides that "The statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one." The simulation was clear; but the contract of sale was based on a real and licit consideration. The first error assigned is nonexistent.

██ It is not necessary for us to determine whether or not the contract entered into between the plaintiff and Attorney García Mújica was valid, nor whether the plaintiff and he were in *pari delicto,* since those were not the grounds

relied on for the action herein. The complaint, as we have seen, is based solely on the nullity of deed No. 102. It is true that the lower court in its opinion amply discusses the said contract for services and reaches the conclusion that the contracting parties were in *pari delicto*. However, even conceding for the purpose of this opinion that such holding was erroneous, the appeal is taken from the judgment itself and not from the grounds set forth in the opinion. *Bianchi* v. *Heirs of Bianchi, ante,* pp. 557, 564; *Escudero* v. *Mulero,* 63 P.R.R. 551, 565, and *Cruz* v. *Carrasquillo,* 61 P.R.R. 422. And this Court has invariably upheld the doctrine that an appellant cannot, on appeal, change the theory of his case and, if he does, his appeal or the corresponding assignment will be dismissed. *Madera & Hno. Inc.* v. *Solares & Co.,* 43 P.R.R. 131; *Viñas* v. *J. S. Waterman & Co.,* 43 P.R.R. 912; *Serra, Garabís & Co. Inc.* v. *Municipality,* 42 P.R.R. 452; *Felicie et al.* v. *P. R. Racing Corp. et al.,* 38 P.R.R. 423; *García* v. *Díaz,* 33 P.R.R. 98; *Cortijo* v. *Rosario,* 33 P.R.R. 431; *Calderón* v. *Reyes,* 31 P.R.R. 260; *P. R. Benev. Soc.* v. *Mun. of Ponce et al.,* 28 P.R.R. 773; *Figueroa* v. *Figueroa et al.,* 23 P.R.R. 405; *Suc'n of Orcasitas* v. *Suc'n of Orcasitas,* 21 P.R.R. 105; *Coto* v. *Rafas et al.,* 18 P.R.R. 493; and *Montilla* v. *Van Syckel et al.,* 8 P.R.R. 153.

As we have already indicated, the lower court rendered judgment dismissing the complaint on the merits. Its findings of fact are supported by the evidence, and a careful examination of the latter fails to convince us that it committed manifest error in the weighing of such evidence or that it acted under the influence of passion, prejudice, or partiality. Therefore, we should not disturb its findings. *People* v. *Santos, ante,* p. 610; *Ramos* v. *Rosario, ante,* p. 641, 648, and cases cited therein.

The judgment appealed from will be affirmed.